UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS J. GEER, SR. and
SHARON M. GEER,

       Plaintiffs,

vs.

Case No. 04-CV-71294

HON. GEORGE CARAM STEEH

MEDALLION HOMES LIMITED
PARTNERSHIP and
RIDGEWOOD, L.L.C.,

       Defendants.
_____/

OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT [DOCUMENT NO. 21] AND GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DOCUMENT NO. 19]

David and Sharon Geer ("Plaintiffs") complain of violations of two federal acts: (1) the Americans with Disabilities Act of 1990, 42 U.S.C.§§ 12181-12189, ("ADA"), and (2) the Fair Credit Reporting Act, 15 U.S.C.§ 1681 *et seq*, ("FCRA"). Plaintiffs also allege state claims for accessibility violations of Article III of the MPWDCRA, and a claim related to failure to return an alleged $1,400 cash deposit.

Plaintiffs move for summary judgment in their favor on the ADA and MPWDCRA claims. In a cross-motion for summary judgment, defendant Ridgewood, L.L.C., ("Ridgewood") and defendant Medallion Homes, L.P., ("Medallion") (collectively "Defendants"), move for dismissal of all of plaintiff's claims with prejudice.

The Court heard oral argument on the cross-motions for summary judgment. For the reasons stated below, plaintiff's motion for summary judgment is DENIED and defendants' motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

Medallion is a seller of manufactured homes. Ridgewood rents the lots in the Ridgewood Community, where the manufactured homes are placed. On October 6, 2001, plaintiffs filled out a rental application with Ridgewood, and gave a $525.00 deposit check. The signed application gave defendants authorization to obtain credit information.

At this time, Ridgewood's office was located in a temporary construction trailer. There were four stairs leading to the entrance of the temporary office, and Mr. Geer, who is a paraplegic and is wheelchair bound, did not enter the sales office on this date. Plaintiffs did not inquire in October 2001 whether there was a ramp available for Mr. Geer to enter the sales office, and defendant Ridgewood admits that there was no ramp available at that time. Defendants concede this was a past violation of the ADA. However, plaintiffs agree that Ridgewood's sales office is now permanently located in a handicapped accessible community center and have thus dropped a claim for injunctive relief against Ridgewood only.

On October 9, 2001, plaintiffs met Jackie Brennan, a Medallion salesperson, at a restaurant to discuss floor plans. On October 13, 2001, plaintiffs met with Ms. Brennan at the potential sites for placement of a manufactured home. Plaintiffs also entered into a purchase agreement with Medallion and gave a $100.00 deposit check. Mrs. Geer alleges that on November 24, 2001 she gave Ms. Brennan an additional deposit of

2

$1,400.00 in cash during a meeting at another community - Northville Crossing.  Also on November 24, 2001, plaintiffs assert they were advised by Ms. Brennan that they needed to correct their credit report, as they had bad credit scores related to alleged identity theft.

On April 6, 2002, plaintiffs were advised by Ridgewood that they were closing their file due to lack of activity.  Their $525.00 deposit check was returned by Ridgewood with this correspondence.  Plaintiffs scheduled a meeting with Judy Cloude, a Medallion Homes salesperson, for April 26, 2002, wherein a temporary ramp was provided for Mr. Geer at the Medallion Homes sales office in Northville.  They were advised of other communities wherein they could place a manufactured home from Medallion.  After visiting these other sites, plaintiffs never returned to Ridgewood or Medallion Homes.  On July 17, 2002, their $100.00 deposit was returned by Medallion for inability to obtain financing.

In June 2003, Ridgewood moved from the temporary office in the trailer into the community center.  Defendants allege that the Ridgewood office in the community center is fully handicapped accessible, as is the Medallion Homes sales office, also located in the Ridgewood community center.  Plaintiffs do not challenge the current accessibility of the Ridgewood community center.  Plaintiff's argue, however, that absent injunctive relief, Medallion could simply move its sales offices back into an inaccessible model home.

Finally, plaintiffs allege that Medallion obtained a second credit report on April 25, 2002, without authorization.  Plaintiffs admit they gave permission to Medallion to obtain an initial credit report, and that Medallion did so on November 5, 2001.  On April 6,

2002, Ridgewood advised plaintiffs that their file was being closed due to no activity. On April 9, plaintiffs wrote to Ridgewood that they had been diligently clearing up their paperwork to prove their "good character and intent." Plaintiffs then met with Jackie Cloude from Medallion on April 26, 2002, after the second credit report was received.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

4

supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

**I. Standing**

The Supreme Court has set forth three fundamental requisites of standing that every litigant invoking the jurisdiction of the federal courts must possess: (1) injury in fact - an invasion of a legally-protected interest that is both concrete and particularized, actual or imminent, (2) causation, and (3) redressability by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Only injunctive relief, and not damages, is available under Title III of the ADA. 42 U.S.C. § 12188(a)(1) (providing that remedies under Title III are the same as those

5

outlined in 42 U.S.C. § 2000a-3(a) which do not permit recovery of monetary damages); see also Smith v. Wal-Mart Stores, Inc., 167 F.3d 286, 293 (6th Cir. 1999) (recognizing that Title III enforcement statute 42 U.S.C. § 12188, which incorporates the remedies of 42 U.S.C. § 2000a-3(a), does not include *money damages);* Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1120 (9th Cir. 20000) (stating a plaintiff who files an ADA claim can at most hope to improve access through an injunction).

In this case, the plaintiffs have not returned to Ridgewood or Medallion since their file was closed in April 2002 due to lack of activity. Mr. Geer testified that he was no longer interested in pursuing any future housing at Ridgewood or with Medallion Homes. (D. Geer dep. at 49; S. Geer dep. at 68). The first factor under Lujan, injury in fact, cannot be met because the likelihood of future injury is only speculative, as opposed to actual or imminent, and a favorable decision for Plaintiffs would not redress the alleged injury, as required by the third factor. See Davis v. Flexman, 109 F. Supp. 2d 776, 783 (D. Ohio 1999)(deaf plaintiff found to lack standing for injunctive relief where the defendant violated the ADA but the plaintiff no longer attended counseling sessions at the clinic and did not intend to in the future).

Plaintiffs argue that injunctive relief is warranted because they allege Medallion is likely to move its sales office out of the community center and back to a model home unless the Court grants a permanent injunction. Plaintiffs allege that Medallion falsely represented that its facilities were handicapped accessible in the past due to portable ramps, and point out that while Medallion has stated it "currently" does not use a model home as its sales office at Ridgewood, it has not stated that it intends to "never" again

6

do so. This argument does not address whether plaintiffs would return to either sales office but for the accessibility problems.

Future injury in fact is not imminent where plaintiffs have no concrete plans to return to Ridgewood or Medallion's sales office. See Lujan, 504 U.S. at 564 (finding where a plaintiff testified she would return to Sri Lanka "in the future," that "such 'some day' intentions -- without any description of concrete plans, or indeed even any specification of when the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require"). In this case, plaintiffs have not stated they ever intend to return for any purpose. Their testimony indicates plaintiffs do not intend to attempt to transact any further business in either defendants' sales office.

Since injunctive relief is the only remedy available, the ADA complaint should be dismissed for lack of standing. See Bird v. Lewis & Clark College, 303 F.3d 1015, 1021 (9th Cir. 2002) (plaintiff seeking injunctive relief must demonstrate not only that he has suffered or is threatened with a concrete and particularized legal harm, but also sufficient likelihood that he will again be wronged in a similar way); Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (finding plaintiffs lacked standing to sue for injunctive relief regarding courthouse accessibility where plaintiffs had not attempted to return to the courthouse, and had not alleged that they intended to return in the future); Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000) (concluding that proof of an intent to return to the place of injury "some day" is insufficient to establish standing under Title III, and that a plaintiff must instead prove that he or she "would visit the building in the imminent future" but for the failure to comply with the ADA). Plaintiffs in this case lack

standing because they have not demonstrated that they plan to return at any time, much less shown they have concrete plans for returning. This makes it unnecessary to decide whether Medallion could possibly relocate its sales office to an inaccessible model home at some future date.

Plaintiffs lack standing to sue under Title III of the ADA because injunctive relief is the only remedy available, and plaintiffs have no current interest in visiting either defendants' sales office.

## II. Fair Credit Reporting Act

Under sections 1681n and 1681o of the FCRA, for allegations of willful and negligent misuse or acquisition of a consumer report, the plaintiff must prove that (1) there was a consumer report, (2) that defendants used or obtained it, and (3) that they did so without a permissible statutory purpose. *Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002). The plaintiff must also prove the defendants acted with the specified level of culpability, which is willfulness under section 1681n and negligence under section 1681o. *Id.*

There is no dispute that the second credit report in plaintiffs' exhibit V qualifies as a consumer report, thereby satisfying the first element of a potential violation. The evidence also indicates the report was ordered by Medallion, satisfying the second element that defendants used or obtained the consumer report. As a defense against the third element, that defendants obtained the consumer report without a permissible statutory purpose, defendants cite to 15 U.S.C. § 1681b(a)(3)(A), regarding use in connection with a credit transaction involving the consumer.

8

Section 1681b(a)(3)(A) is interpreted to allow access to a consumer report when that access would either benefit the consumer or facilitate the collection of pre-existing debt. Smith v. Bob Smith Chevrolet, Inc., 275 F.Supp.2d 808, 817 (W.D. Ky. 2003). In this case, defendants argue that Medallion obtained the second credit report in order to determine what corrections had been made and to assist the Geers in connection with a credit application. Access in this case would clearly benefit the consumer.

The time line of relevant facts is that Ridgewood closed plaintiffs' account due to no activity on April 6, 2002. On April 9, plaintiffs wrote to Ridgewood that they had been diligently clearing up their credit to prove their "good character and intent." Medallion obtained the second credit report on April 25, 2002. Plaintiffs met with Jackie Cloude from Medallion on April 26, 2002. At the time the second credit report was received, Medallion had not closed plaintiffs' account, but rather was getting ready for a meeting with them the next day. Mr. Geer's testimony supports the conclusion that the plaintiffs were continuing to work with Medallion even after Ridgewood closed their account:

> I think everything just pretty much went right down the tubes after they sent the deposit back and told us no activity. I think at that point we started looking at vacant lots, you know, out in the country. We were just trying to find someplace else to put our house on rather than at Ridgewood.

(D. Geer Dep. at 49).

Plaintiffs have failed to support a violation of the FCRA by Medallion in this case.

### III. State Law Claims

The Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims.

## CONCLUSION

For the reasons stated, defendants' motion for summary judgment is GRANTED and plaintiffs' motion for summary judgment is DENIED.

                                                s/George Caram Steeh
                                                GEORGE CARAM STEEH
                                                UNITED STATES DISTRICT JUDGE

Dated: October 20, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on October 20, 2005, by electronic and/or ordinary mail.

                                                s/Josephine Chaffee
                                                Secretary/Deputy Clerk